**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marisol Villalobos Mercado, | No. CV-20-00423-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Marisol Villalobos Mercado's Applications for Disability Insurance benefits and Supplemental Security Income benefits by the Social Security Administration ("SSA") under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 17, "Pl. Br.") Defendant SSA Commissioner's Response Brief (Doc. 18, "Def. Br."), and Plaintiff's Reply Brief (Doc. 22, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 13, "R.") and now reverses and remands the Administrative Law Judge's decision (R. at 19–30).

**I.     BACKGROUND**

Plaintiff filed Applications for Disability Insurance benefits and Supplemental Security Income benefits on May 12, 2016, for a period of disability beginning on May 7, 2014. (R. at 19.) Her claim was denied initially on August 5, 2016, and upon reconsideration on December 30, 2016. (R. at 19.) Plaintiff appeared before the ALJ for a

hearing regarding her claims on October 25, 2018, which the ALJ denied on January 25, 2019. (R. at 19, 30.) On December 31, 2019, the Appeals Council denied Plaintiff's Request for Review and adopted the ALJ's decision as the agency's final decision. (R. at 1–3.)

The Court has reviewed the medical evidence in its entirety and will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: rheumatoid arthritis; history of ankle surgery; degenerative disc disease; torticollis; and knee impairment. (R. at 21.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff was not disabled from the alleged disability onset-date through the date of the decision. (R. at 30.) The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 23.) Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC"): "[Plaintiff] has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she: cannot work around hazards such as moving machinery and unprotected heights; and is limited to frequent handling and fingering." (R. at 23.) Accordingly, the ALJ found that Plaintiff can perform jobs that exist in significant numbers in the national economy. (R. at 29.)

## II.    LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the

Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

**III. ANAYSIS**

Plaintiff raises two issues before the Court. First, Plaintiff argues the ALJ erred in rejecting her symptom testimony. (Pl. Br. at 15–22.) Second, Plaintiff argues the ALJ erred in assigning partial weight to the opinions of Dr. Donald Fruchtman, a consultative examiner, and Dr. Nehad Soloman, Plaintiff's treating rheumatologist. (Pl. Br. at 22–27.)

The Court finds that the ALJ erred in rejecting Plaintiff's symptom testimony because the ALJ provided insufficient reasons for rejecting Plaintiff's symptom testimony.

Second, the Court finds the ALJ did not err in assigning partial weight to Dr. Fruchtman's and Dr. Soloman's medical opinions.

### A. The ALJ erred in rejecting Plaintiff's symptom testimony by relying solely on Plaintiff's medical evidence.

Plaintiff argues the ALJ erred in rejecting her symptom testimony. (Pl. Br. at 15–22.) An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). If the claimant presents such evidence then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This is the most demanding standard in Social Security cases. *Id.* at 1015. "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

Here, the ALJ found "that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. at 24.)

The ALJ did not provide "specific, clear and convincing" reasons supported by substantial evidence in rejecting Plaintiff's symptom testimony. *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ goes into great detail discussing Plaintiff's medical evidence and makes a short remark that in February 2018, Plaintiff reported 70% pain relief from medications and that she had improved function and activities of daily

living ("ADLs") when she took opiates. (R. at 26, 674, 676.) The ALJ does not indicate what ADLs Plaintiff might be referring to and provides no further analysis regarding Plaintiff's ADLs. As such, the ALJ has not provided specific, clear, and convincing reasons for rejecting Plaintiff's ADLs.

The ALJ's main reason for rejecting Plaintiff's testimony—that it was purportedly inconsistent with the objective medical evidence—also fails because, even if true, it cannot form the sole basis for rejecting a claimant's testimony. *See Burch*, 400 F.3d at 682. Since the Court rejects the ALJ's other bases for rejecting Plaintiff's testimony, the ALJ's reliance on the objective medical evidence stands alone, and therefore, is inadequate. As such, the ALJ erred in rejecting Plaintiff's symptom testimony.

> **B.    The ALJ did not err in assigning partial weight to Dr. Fruchtman's and Dr. Soloman's medical opinions.**

Plaintiff argues the ALJ erred in assigning partial weight to the opinions of Dr. Fruchtman and Dr. Soloman. (Pl. Br. at 22–27.) While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.* This is so because treating physicians have the advantage of in-person interaction and typically a longer history of treatment than a claimant's other doctors, and their "subjective judgments . . . are important, and properly play a part in their medical evaluations." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester*, 81 F.3d at 830–31). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons

that are supported by substantial evidence in the record." *Id.* An ALJ meets this standard by "setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

### 1. The ALJ provided specific and legitimate reasons for assigning partial weight to Dr. Fruchtman's opinion.

In July 2014, Dr. Fruchtman performed a consultative examination. (R. at 27, 367–74.) Dr. Fruchtman noted that Plaintiff had a normal gait, but that she walked as if she was trying to protect her body and that she seemed to be overexaggerating her discomfort when she was walking. (R. at 27, 368–69.) Dr. Fruchtman also noted that Plaintiff deferred heel and toe walking, and Plaintiff reported discomfort when performing various physical exercises, which led Dr. Fruchtman to state that it seemed Plaintiff was overstating her discomfort. (R. at 27, 369.) Dr. Fruchtman also expressed that Plaintiff had fibromyalgia symptoms that were part of the problem and that the rheumatoid arthritis was less acute. (R. at 27, 370.) Dr. Fruchtman found that Plaintiff's examination showed decreased musculoskeletal range of motion throughout her body but no atrophy, slightly positive straight leg raises, normal reflexes, and hypersensitivity to pinprick. (R. at 27, 371.) Dr. Fruchtman noted that Plaintiff did not exhibit evidence of significant deformities that might be expected in someone who has had rheumatoid arthritis for 15 years or significant synovitis or effusions. (R. at 27, 370–71.) Dr. Fruchtman also opined that Plaintiff could: lift and/or carry 20 pounds occasionally and less than 10 pounds frequently; stand and/or walk for four hours and sit six-to-eight hours in an eight-hour workday; and occasionally climb, stoop, crouch, reach, handle, finger, and feel. (R. at 27, 371–73.)

The ALJ gave Dr. Fruchtman's opinions regarding exertional assessments partial weight and gave his opinions regarding non-exertional limitations, including limiting Plaintiff to only occasional manipulative activities, minimal weight because they were not supported by substantial evidence in the record. (R. at 27.) The ALJ also noted that Dr. Fruchtman's own assessment indicated that Plaintiff appeared to be overreacting and

- 6 -

exaggerating her symptoms during his examination, which the ALJ relied on in assigning weight to Dr. Fruchtman's opinions. (R. at 27.)

Plaintiff argues the ALJ erred in finding Dr. Fruchtman's opinions were not supported by substantial evidence in the record. (Pl. Br. at 25.) The Court disagrees. Dr. Fruchtman noted in his report that Plaintiff overreacted and seemed to exaggerate her pain levels and abilities. (R. at 368–71.) The ALJ found these findings of overreaction and exaggeration did not match Dr. Fruchtman's own findings that Plaintiff had pain and difficulty moving every joint. The ALJ also found that treating sources found that almost all of Plaintiff's joints were normal. (R. at 807, 815.) As Defendant correctly points out, Plaintiff refused to stand on her toes with Dr. Fruchtman though she had the ability to do this normally at many treatment visits. (Def. Br. at 15; R. at 648, 652, 657, 662, 667, 671, 675, 679, 686, 691, 694, 698.) The ALJ provided specific and legitimate reasons for assigning partial weight to Dr. Fruchtman's opinions because Dr. Fruchtman's opinions were contradicted by his own medical observations as well as other medical opinions in the record.

### 1. The ALJ provided specific and legitimate reasons for assigning partial weight to Dr. Soloman's opinion.

Dr. Soloman is Plaintiff's treating rheumatologist, and her reports indicate considerable restrictions in Plaintiff's functioning. (R. at 27, 594–98, 642–44, 937–41.) In June 2016, Dr. Soloman indicated that Plaintiff's active and erosive rheumatoid arthritis limited her to occasionally lift and/or carry only less than ten pounds, stand and/or walk less than two hours, and sit one hour total during an eight-hour workday. (R. at 27, 594–98, 642–44.) In September 2018, Dr. Soloman made similar findings. (R. at 27, 937–41.)

The ALJ found that Dr. Soloman's profound degree of restriction was not supported by an explanation of Plaintiff's medical concerns and that her opinions were not consistent with substantial evidence in the record, including Dr. Fruchtman's findings that Plaintiff showed no significant joint deformities or other rheumatoid arthritis-related abnormalities. (R. at 27–28.) The ALJ also found that Dr. Soloman's progress notes reference x-rays showing erosive changes, but that imaging studies showed degenerative disc disease and

no erosive changes. (R. at 28.) The ALJ also indicated that Dr. Soloman's own treatment records showed tenderness and swelling at various joints but no deformities, no crepitus, no neurological defects, and Plaintiff reported pain relief and improved functioning with pain medications. (R. at 28, 518–93, 805–936.) For these reasons, the ALJ assigned only partial weight to Dr. Soloman's opinions.

Plaintiff first argues that the ALJ erred in rejecting Dr. Soloman's opinion because it is error to discount check-box questionnaires as insufficient to support the treating physician's assessment. (Pl. Br. at 24.) The ALJ does not rely on this as a reason for assigning partial weight to Dr. Soloman's opinion, however, and relies on other reasons for discounting the medical opinion.

Second, Plaintiff argues the ALJ cherry-picked normal findings from the examinations and ignored other relevant findings. (Pl. Br. at 24–25.) Dr. Soloman's treatment notes repeatedly indicate Plaintiff had no deformities and only sometimes had some tenderness and swelling. (R. at 520, 525, 529, 533, 537, 541, 545, 549, 553, 557, 807, 814–15, 821, 829, 836, 848, 852, 856, 867, 871–72.) Dr. Soloman notes consistently that Plaintiff had no deformities, which undercuts Plaintiff's argument that the ALJ cherry-picked normal findings.

Finally, Plaintiff argues the record does not support the ALJ's finding that Plaintiff sustained improvement from medication. (Pl. Br. at 25.) Again, the Court disagrees. The ALJ discussed throughout the opinion the evidence showing Plaintiff improved with various treatment methods, indicating sometimes that her treatment provided 50% to 70% relief. (R. at 25–26, 603, 611, 613, 646, 674, 684, 693.) For example, Plaintiff indicated physical therapy helped provide her relief. (R. at 603, 611, 613.) Throughout 2017 and 2018, Plaintiff repeatedly said she experienced improvement with medication, as well, indicating anywhere between 30% to 70% relief with the medication. (R. at 646, 674, 684, 693.)

The ALJ provided specific and legitimate reasons for assigning partial weight to Dr. Soloman's opinion because Dr. Soloman's own treatment notes contradicted her opinion and because Plaintiff showed great improvement with treatment.

### C. The appropriate remedy is to remand Plaintiff's case for a new disability finding.

Plaintiff asks the Court to apply the "credit-as-true" rule, which would result in a remand of Plaintiff's case for payment of benefits rather than for further proceedings. (Pl. Br. at 27–28.) The credit-as-true rule only applies in cases where three elements are present. *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099–1102 (9th Cir. 2014). First, the ALJ must have failed to provide legally sufficient reasons for rejecting medical evidence. *Id.* at 1100. Second, the record must be fully developed, there must be no outstanding issues that must be resolved before a determination of disability can be made, and the Court must find that further administrative proceedings would not be useful. *Id.* at 1101. Further proceedings are considered useful when there are conflicts and ambiguities that must be resolved. *Id.* Third, if the above elements are met, the Court may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'" *Id.* (citations omitted).

In this case, the ordinary remand rule, not the credit-as-true rule applies. First, as previously discussed, the ALJ provided legally insufficient reasons for rejecting symptom testimony. Nevertheless, because the ALJ did not correctly evaluate Plaintiff's symptom testimony, this case still presents evidentiary ambiguities that must be resolved. The ALJ erred in evaluating Plaintiff's ADLs and considering them with Plaintiff's symptom testimony, so it is unclear how Plaintiff's symptom testimony might impact the ALJ's overall finding of Plaintiff's disability.

Accordingly, the Court applies the ordinary remand rule and will remand this matter for further development of the record and a new disability determination.

**IT IS THEREFORE ORDERED** reversing and remanding this matter to the Social Security Administration for further proceedings consistent with the Order.

- 9 -

Specifically, the ALJ must consider Plaintiff's symptom testimony.

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly and close this case.

Dated this 29th day of April, 2021.

_____
Honorable Diane J. Humetewa
United States District Judge